UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Curtis Dale Richardson, | ) | C/A No. 4:04-0039-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Willie Eagleton, Warden of ECI; | ) | |
| M. Opsahl, SCDC Financial Accountant; | ) | |
| Susanne Reich, SCDC Financial | ) | |
| Accountant; and Jon Ozmint, Director, | ) | |
| SCDC, official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Curtis Dale Richardson is an inmate of the South Carolina Department of Corrections ("SCDC"). At the time of the filing of this lawsuit, plaintiff was an inmate with the Evans Correctional Institution ("ECI"). He is currently housed at the Kershaw Correctional Institution ("KCI"). Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated. In particular, the plaintiff alleges a denial of his due process rights by debiting his prison account without his authorization and that the conditions of confinement at ECI are unconstitutional as a result of overcrowding and unsanitary conditions.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02, this matter was referred to United States Magistrate Judge Thomas E. Rogers, III for pretrial handling. This matter is before the Court on defendants' motion for summary judgment filed September 26, 2004. By order filed October 1, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond

1

adequately. Plaintiff filed a response to the motion for summary judgment on October 26, 2004. The plaintiff also filed a motion for preliminary injunction and temporary restraining order on November 5, 2004. Defendants filed a response in opposition to plaintiff's motion on January 18, 2005. Plaintiff filed a reply to the response on February 17, 2005. On May 18, 2005, United States Magistrate Rogers issued a Report and Recommendation ("the Report") analyzing the issues and recommending that the District Court grant the defendants' motion for summary judgment and deny the plaintiff's motion for preliminary injunction. After several motions for extension of time, the plaintiff timely filed objections to the Report on July 7, 2005. In his objections the plaintiff disputes the Magistrate Judge's recommendation as to the pending motions.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a *de novo* determination of those portions of the report and recommendation to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The Court will first discuss plaintiff's objections to the Magistrate Judge's recommendation as to defendants' motion for summary judgment. If this Court grants summary judgment to the defendants then all other pending motions, including plaintiff's motion for preliminary injunction become moot.

## Summary Judgment Standard

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary Judgment is proper

if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rules 56(c), FRCP; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. *Celotex*, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Barber v. Hosp. Corp. of Am.*, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).

### Plaintiff's Trust Fund Account Claim

Plaintiff alleges that the defendants' have violated his due process rights by debiting his prison account in order to pay court order filing fees for prior federal civil rights actions without his authorization. Defendants argue that they are entitled to summary judgment because the funds were debited from plaintiff's account pursuant to court order. The Magistrate Judge recommended that summary judgment be granted because defendants were following the requirements of local

3

miscellaneous order 4:96-mc-38-2 or, in the alternative, because defendants are entitled to qualified immunity. Plaintiff objects to this recommendation arguing that the miscellaneous order was overruled by the enactment of the PLRA and that the defendants knew that they were violating the PLRA and continued to debit his trust account.

**Trust Account**

Defendants assert that, consistent with Order 4:96-mc-38-2, SCDC is authorized to collect filing fees from an inmate's trust account "at least monthly" and at any time the prisoner's account exceeds $10.00. The plaintiff argues that this order was superseded by the Prison Litigation Reform Act ("PLRA"). Congress passed the PLRA because of the proliferation of prisoner litigation. The goal of the PLRA is as follows:

> Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price?

*Roller v. Gunn*, 107 F.3d 227 (4th Cir. 1997) (*citing* 141 Cong. Rec. at S7526 (May 25, 1995) (statement of Senatory Kyl)). The PLRA made several changes to 28 U.S.C. § 1915, including the one at issue in the instant case § 1915(b)(2):

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of court each time the amount in the account exceeds $10 until the filing fees are paid.

The PLRA was enacted April 26, 1996, prior to the issuance of Judge Houck's order on June 20, 1996. The purpose of that order was to revise procedures for handling civil rights and habeas corpus

4

actions filed by state, local, and federal prisoners because of the recently enacted PLRA. Therefore, plaintiff's contention that the PLRA superseded Judge Houck's order is without merit.

The plaintiff also objects to the Magistrate Judge's reliance on the statement of assets made by the plaintiff. The plaintiff argues that "[t]his document is a statement of assets only and does not instruct the withdrawal language to concur with the defendants deductions. 18 1915 E superseded Judge Houck's order by principle of stare decisis, last law past, stands." (Objections p. 4.) The plaintiff argues that the debiting of prisoner accounts is unconstitutional because it "obstructs access to courts because myself and other inmates are unable to purchase necessary supplies such as paper for the prosecution of pending actions." (Objections p. 6.) Additionally, plaintiff alleges that the defendants improperly debit funds in retaliation for the filing of law suits.

The Court agrees with the Magistrate Judge that it is not necessary to address the issue of whether SCDC should have only debited twenty percent (20%) of the previous month's income from his account because the plaintiff gave consent to the actions of SCDC by signing the Statement of Assets Form. The Statement of Assets Form signed and submitted by the plaintiff in the current case states:

> *I authorize collection of the filing fee and consent to collection or collections of the filing fee until the filing fee is paid in full and any amount of costs, sanctions, and/or fees that might be imposed by the court during this litigation. Such collections may include, but are not limited to, withholding from my inmate accounts, trust funds, or other funds, and deductions from any of my other inmate accounts, AT ANY TIME, including (but not limited to) any occasion(s) that any of my inmate accounts, trust funds, or other funds exceeds ten dollar, and UNTIL THE FEES ARE PAID IN FULL.*

As discussed more fully in the Report, the plaintiff clearly consented to money being debited from his prison account at any time that account exceeded $10. The plaintiff argues that the Statement of Assets Form "is a statement of assets only and does not instruct the withdrawal language to concur

with the defendants deductions." (Objections p. 4.) However, plaintiff is overlooking the fact that it is this document which gives SCDC the authority to debit his trust account and forward those funds to the clerk of court. Consequently, this Court finds that defendants acted consistent with the Statement of Assets signed by the plaintiff which authorized them to debit his trust account for the funds at issue.

**Qualified Immunity**

The Magistrate Judge recommended that, even if the defendants incorrectly applied the PLRA, defendants Reich and Opsahl[1] are entitled to qualified immunity. Plaintiff objects to the granting of qualified immunity. He alleges that "[a]fter the first illegal/unconstitutional debit by the defendants, the plaintiff forwarded legal copies of 1915 (PLRA) enactment on the proper procedure for debiting his account." (Objections p. 4.)

Public officials are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which reasonable persons would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect public officials in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In *Harlow v. Fitzgerald*, 457 U.S. 800, 816-16 (1982), the United States Supreme Court adopted an objective test for qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). This test makes the official's subjective intent irrelevant. *Crawford-El v. Britton*, 523 U.S. 574 (1998) The qualified immunity test necessitates a two-part, sequential analytical process. *Wilson*, 526 U.S. at 609; *Broderick*, 225 F.3d at 446. First, there must be a deprivation of a constitutional or statutory

---

[1] Reich and Opsahl are employed with SCDC as financial accountants.

6

right. This right must be defined in a particularized sense; its contours must be sufficiently clear that a reasonable official would understand his conduct violates the right. *Anderson*, 483 U.S.at 640. Second, this Court must determine whether the alleged right was clearly established at the time of the violation. Qualified immunity exists to protect those officials who reasonably believe that their actions do not violate federal law. *Broderick*, 225 F.3d at 435.

This Court finds that, at the time of the alleged violation, it was not clearly established that the defendants acted in violation of the PLRA. In fact, it is not clear to this Court even now if the defendants' actions were in violation of the PLRA in light of the plaintiff's Statement of Assets. Consequently, this Court finds that defendants Reich and Opsahl are entitled to summary judgment on the basis of qualified immunity.

### Conditions of Confinement Claim

Plaintiff asserts that his constitutional rights have been violated by his conditions of confinement while at ECI. Specifically, the plaintiff alleges that due to overcrowding he has suffered stress; was exposed to unsanitary conditions; received food poisoning; has been cut by other inmates; suffered medical treatment deficiencies, constipation, nausea, and hunger pains; and was so weak he was bedridden for not being properly fed. He further alleges that he was exposed to tobacco smoke twenty-four (24) hours a day causing him chest pain. Plaintiff states that he was in fear for his life and needed psychological treatment as a result of the conditions of confinement. The Magistrate Judge agreed with the defendants' argument that the plaintiff has failed to show a serious deprivation of a basic human need and deliberate indifference to prison conditions on the part of prison officials..

The Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need

7

such as food, warmth, or exercise. *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Plaintiff must also produce evidence of serious or significant physical or emotional injury resulting from the challenged conditions to withstand summary judgment. *Strickler v. Waters*, 989 F.2d 1375, 1380 (4th Cir. 1993); *but see* 42 U.S.C. § 1997(e) (prisoner cannot maintain a § 1983 action for mental or emotional injury absent physical injury).

Although an issue of fact may exist as to overcrowding while plaintiff was at ECI, he has not shown any significant physical or emotional injury as a result of any violation to raise an issue of fact for trial. In his objections, plaintiff states only "Plaintiff was psychologically and physically injured while at Evans Corr Ins (see medical records)." (Objections p. 2.) Initially, the Court would like to note that it is the plaintiff's burden to establish injury, not this Court's duty to search through the records to find an injury. However, the Court has reviewed the medical records plaintiff has attached to his Objections. Although the records are difficult to read due to photocopying, it appears to this Court that plaintiff was treated while at ECI for a cyst on his head. This is also supported by the affidavit of Pravin Patel in C/A No. 2:01-2553-26AJ, where he states: "My staff and I have provided inmate Richardson with care for various conditions such as musculoskeletal discomfort/lower back pain, a slow growing nodule on his head, and other ailments." (Objections p. 28.) While the medical records may support that plaintiff has a cyst or nodule on his head, there is no evidence in the record that he has suffered significant physical injury as a result of any violation sufficient to raise an issue of fact for trial. Without a showing of physical injury, the plaintiff cannot recover for any alleged emotional distress. *See* 42 U.S.C. § 1997(e)(e); *Zehner v. Trigg*, 952 F. Supp. 1318 (S.D. Ind. 1997).

8

**Triple Celling**

Plaintiff states in his objections that he is "alternatively attempting to reenforce the same see also Plyler v. Leeke, CA NO. 3:82-876-2, 1986 WL 84459 (D.S.C. March 20. 1986), which, inter alia, forbade the SCDC from engaging in the practice of putting three inmates in one cell, or "triple celling." (Objections p. 1.) In *Plyer v. Leeke*, the Honorable C. Weston Houck approved a settlement agreement between SCDC and a class of prisoner plaintiffs. Judge Houck notes that the settlement agreement came into being after extensive negotiations over the period of two and a half years. "The terms of the settlement agreement provide generally for a maximum number of inmates to be assigned to each of the existing institutions and certain minimum space requirements to be provided each of them in their housing assignments." *Id*. at *2. As part of the settlement Judge Houck retained jurisdiction for the enforcement of the agreement.

The settlement agreement, in part, states:

O.   The parties expressly agree that this Agreement is not an admission of constitutional violation, nor does this Agreement establish constitutional minimum or maximum standards with respect to the claim of "overcrowding". The parties have entered into this Agreement solely as a means to put a reasonable end to the controversy, to avoid the costs, time and risks which litigation would involve for both parties, and this Agreement should not be construed in any manner as establishing constitutional standards, minimums or maximums or thresholds of constitutional harm to Plaintiffs.

*****

Q.   This Decree is solely enforceable by the Plaintiff class and through the Plaintiff class with class remedies.

R.   Violation of this Decree shall not serve as the basis of liability of the Defendants to any individual Plaintiff, absent proof of proximate cause and damage.

*Id*. at *6. As such, the mere allegation of triple celling does not constitute a constitutional violation.

Instead, a plaintiff must establish both proximate cause and damage. As discussed above, this Court finds that the plaintiff has failed to establish an injury sufficient to satisfy *Strickler*.

## Conclusion

After a review of the case law and record before it, the Court adopts the Report and Recommendation of the Magistrate Judge, incorporates it herein, and overrules plaintiff's objections. For the reasons stated therein and in this order, defendants' motion for summary judgment is **GRANTED**. All pending motions are **DENIED** as **MOOT**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

August 3, 2005
Florence, SC